UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SEAN SALLEY,

                Petitioner,

    -against-                                07 Civ. 455 (GEL)

H.D. GRAHAM,                           **OPINION AND ORDER**

                Respondent.
------------------------------------------------------------x

Sean Salley, pro se.

Robert M. Morgenthau, District Attorney (David
M. Cohn, Assistant District Attorney, of counsel),
New York, New York, for respondent.

GERARD E. LYNCH, District Judge:

      Sean Salley, a New York State prisoner, seeks a writ of habeas corpus, challenging his conviction on three counts of murder and other crimes, and his resulting sentence to 120 years to life in prison, in the Supreme Court of the State of New York for New York County. The petition will be denied.

## BACKGROUND

      Salley was convicted of murder in the highly-publicized robbery-murder of a marijuana dealer who lived above New York's well-known Carnegie Deli, and the murder of two other victims who were present at the time of the robbery. The prosecution's theory at trial was that Salley and another man, Andre Smith, sought to rob the dealer, Jennifer Stahl, and in the course of the robbery, shot Stahl and four other people in her apartment, two of whom died and two of whom survived to testify at trial.

The evidence at Salley's trial was overwhelming and would have permitted a reasonable jury to find the following facts. In early May 2001, Salley, who had lost his job and was short on cash, recruited Smith to help him rob Stahl's sixth-floor apartment above the Carnegie Deli in Manhattan. On the evening of May 9, 2001, Salley and Smith, on the pretense of purchasing marijuana, went to Stahl's apartment to case the location. The two returned to Stahl's apartment the following evening. Upon entering, Smith pulled out a .38 caliber revolver and told Stahl and four other individuals in the apartment to lie face-down on the floor. Smith took Stahl at gunpoint into the back room where she kept her money and drugs. Meanwhile, Salley bound the arms and legs of the other individuals with duct tape.

After handing over the money and contraband, Stahl pleaded with Salley and Smith not to hurt anyone, but Salley placed the gun against Stahl's head and pulled the trigger, fatally wounding her. Either Salley or Smith then shot each of the other four victims in the head at point blank range. Two individuals were killed. The two survivors called 911 after Salley and Smith left the premises. A surveillance camera in the apartment building photographed Salley and Smith as they entered and left the building. Upon arriving at Stahl's apartment, the police recovered Salley's palm print from the duct tape that had been used to bind one of the victims. Smith's fingerprints were also recovered from the duct tape found at the crime scene.

The next morning, Salley took a Greyhound bus from New Jersey to Atlanta. He then went to New Orleans and, later, to Miami. Following a police investigation, witnesses identified Salley and Smith from the surveillance photographs. On May 20, Smith voluntarily spoke with the police and ultimately confessed to participating in the robbery and murder. The police

arrested Smith and the two surviving victims subsequently identified him in a lineup. Salley remained at large.

On July 14, the television show "America's Most Wanted" aired an episode about the robbery-murder of Stahl and the two other victims. That night, Miami police received a tip that Salley was staying at a homeless shelter in Miami. After surrounding the shelter, several Miami police officers went inside to look for Salley. When a detective spotted Salley in the lobby, Salley ran out the back door, leaped over a railing, climbed a 12-foot chain link fence, and hid in a yard behind a nearby church. The officers then called in the canine unit, and a trained canine subsequently located Salley in the bushes and dragged him out by his left forearm. The officers arrested Salley and recovered from his wallet a driver's license bearing a false name. Salley, however, immediately admitted his true identity to the officers. Paramedics treated Salley for the dog bite, which had caused a small laceration to his left arm and three puncture wounds. Salley's arm was not broken, however, and medical personnel re-wrapped the wound after Salley was taken to the precinct.

The following day, three NYPD detectives arrived in Miami and questioned Salley. After waiving his <u>Miranda</u> rights, Salley confessed, orally and in writing, to participating in the robbery and shooting Stahl. Salley claimed, however, that Smith had shot the four other victims. The next morning, July 16, after again waiving his <u>Miranda</u> rights, Salley repeated his admissions in a videotaped statement. One of the surviving victims subsequently identified Salley in a lineup and also testified against Salley at trial.

A New York grand jury charged Salley with three counts of Murder in the Second Degree (under a felony murder theory), one count of Robbery in the First Degree, three counts of

3

Robbery in the Second Degree, and one count each of Criminal Possession of a Weapon in the Second and Third Degrees. On April 10, 2002, following a hearing, the Supreme Court of New York for New York County (Carol Berkman, J.) denied Salley's motion to suppress his oral, written, and videotaped confessions. Salley's jury trial commenced on May 13, 2002, and on June 18, 2002, the jury convicted him on all counts. On July 29, 2002, Salley was sentenced to an aggregate prison term of 120 years to life. Salley's conviction and sentence were affirmed by the Appellate Division, and the New York Court of Appeals denied leave to appeal. See People v. Salley, 808 N.Y.S.2d 664 (1st Dep't 2006), leave to appeal denied, 6 N.Y.3d 838 (2006).

In this petition, Salley raises only two claims of constitutional error. First, he argues that his waiver of his Miranda rights and the subsequent confession he made to NYPD detectives in Miami were involuntary. Second, he claims that he was denied his right to be present at his trial when the trial judge responded to a jury note requesting a written copy of portions of the judge's charge. Both claims were raised on Salley's direct appeal in the state courts and were rejected. See People v. Salley, 808 N.Y.S.2d at 665-66. Neither provides a basis for federal habeas relief.

## DISCUSSION

### I. Involuntary Waiver and Confession Claim

Salley essentially confessed his guilt in a full statement made to NYPD detectives following his arrest in Miami.[1] Salley does not dispute that he was advised of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), nor could he since he signed a printed form acknowledging that he had been "advised . . . of [his] rights" and was nevertheless "willing to

---

[1] In his petition, Salley objects only to the admission of his oral and written statements stemming from his initial interrogation by NYPD detectives, and does not challenge the admissibility of the subsequent videotaped confession.

4

answer questions" and thus waive those rights. (Resp. App. Ex. I.) Instead, Salley claims that the waiver, and his resulting confession, were involuntary. The trial court held a full evidentiary hearing on this claim, made findings of fact, and issued a written decision rejecting Salley's contention (Id. Ex. K, at 10-13, 20), which was subsequently affirmed by the First Department, see Salley, 808 N.Y.S.2d at 665-66. Based on the factual findings of the trial court, to which this Court is obliged to defer absent circumstances not remotely present here, see 28 U.S.C. § 2254(e)(1); Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003), the state courts' rejection of Salley's claim was not only a reasonable application of federal constitutional law,[2] but was clearly correct.

Salley's arguments supporting his contention that his waiver and confession were involuntary are weak on their face. He claims that he was unable to make a voluntary waiver or statement because he was in pain from the dog bite incurred when he was apprehended by the Miami police, and that the NYPD detective induced the waiver by making a reference to O.J. Simpson. The trial court's findings of fact, which are fully supported by the record of the evidentiary hearing, conclusively demonstrate that Salley's claims are meritless.

The trial court found, after a hearing, that the government had proven beyond a reasonable doubt that Salley had waived his Miranda rights and confessed voluntarily. (Resp. App. Ex. K, at 12.) The court held that the dog bite did not affect the voluntariness of Salley's statements because "[t]he injury and whatever pains he was suffering were certainly not inflicted

---

[2] Because Salley's claims were adjudicated on the merits by the First Department, the writ may be granted only if the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

5

for the purpose of coercing a confession, and were far from rendering him incapable of making reasoned decisions or even impairing his ability to do so." (Id.) The court noted that Salley had been provided with food and adequate rest and "readily admitted his guilt at some length." (Id.) The court concluded that "there was simply no causal connection between Salley's injury and his statements." (Id.) In addition, the court also held that the detective's fleeting reference to the O.J. Simpson case and its "racial overtones" was not an attempt to "dissuad[e] Salley from asserting his right to counsel," and that the defense had unsuccessfully attempted to "transform this conversation into a request by Salley for counsel." (Id. at 11.)

Based on the evidentiary record compiled at the hearing, the trial court's conclusion that Salley voluntarily waived his Miranda rights and confessed to the crime was a reasonable, and indeed correct, application of federal law. The record makes clear that Salley's medical condition was neither dangerous nor highly painful, and that any pain he experienced was not sufficient to call into question his ability to make a voluntary and intelligent decision whether to speak to the police. As for the reference to O.J. Simpson, no principle of federal law prohibits a detective from informing a suspect that the evidence against him is strong and his chances of acquittal low; the detective's suggestion that Salley's case was not comparable to Simpson's was reasonably interpreted by the state court as being in this vein. Salley does not contend that the officer misled him in any way about the gravity of his situation. There is no reasonable theory on which the detective's comment could be construed as coercive. The trial court thus properly applied federal law in concluding that Salley's waiver of his Miranda rights was voluntary, and

that his resulting statements to the NYPD detectives were not the product of improper influence or coercion.[3]

## II. Right to be Present Claim

During deliberations, the jury sent a note asking the trial court for a written copy of portions of the court's charge. The court discussed the request with the attorneys for both sides and, with defense counsel's consent, gave a written copy of the requested portions of the charge to a court officer, who delivered it to the jury. Although the record is "unclear with respect to whether Salley was present," Salley, 808 N.Y.S.2d at 666, Salley now claims that he was absent during these proceedings and that he was therefore deprived of his constitutional right to be present at his trial.

A defendant's constitutional right to be present, which is rooted in the Confrontation Clause of the Sixth Amendment and in the Due Process Clause, "requires a criminal defendant's presence 'to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'" United States v. Jones, 381 F.3d 114, 121 (2d Cir. 2004), quoting Snyder v. Massachusetts, 291 U.S. 97, 108 (1934) (Cardozo, J.). A defendant thus has the right to be present at any proceeding where "his presence has a relation, reasonably substantial, to the

---

[3] In his reply brief, Salley asserts that "the state courts improperly held [his] confession admissible due to the fact of the prosecutor's misconduct of personally vouching for the credibility of the detectives as well as[] the testimony of" one of the government's witnesses. (Pet. Reply Mem. 7.) Because Salley did not raise these claims in his initial petition and, therefore, deprived the government of an opportunity to respond to them, these claims are "not a basis for relief." Bradley v. Burge, No. 06 Civ. 0040, 2007 WL 1225550, at *7 (S.D.N.Y. Apr. 19, 2007); see United States ex rel. Morgan v. McElroy, 981 F. Supp. 873, 876 n.3 (S.D.N.Y. 1997) ("It is well settled in the Second Circuit that a party may not raise an argument for the first time in his reply brief."). In any event, the experienced trial judge did not rely on any such alleged "vouching," and her fact findings cannot be assumed to have been influenced by such impropriety, assuming arguendo that it occurred.

7

fullness of his opportunity to defend against the charge." Snyder, 291 U.S. at 105-06. A defendant has no right to be present, however, "where the proceeding at issue involves only questions of law or procedure," People v. Rodriguez, 85 N.Y.2d 586, 591 (1995), because in such proceedings, the defendant has no "peculiar factual knowledge" that would allow him to make a material contribution, People v. Dickerson, 87 N.Y.2d 914, 915 (1996); see Snyder, 291 U.S. at 106-07 (noting that defendant has no right to be present where his "presence would be useless, or the benefit but a shadow").

Preliminarily, respondent contends that Salley should not be permitted to raise his right of presence claim now because he made no effort during the state trial proceedings to create a contemporaneous record regarding his presence. Respondent argues that under these circumstances, the Court should apply the "presumption of regularity" and conclude that the trial court protected Salley's right to be present at all material stages of the trial. Benn v. Stinson, 917 F. Supp. 202, 207-08 (S.D.N.Y. 1995) (applying "presumption of regularity" where court reporter failed to note defendant's presence at one court session). The Court need not decide whether that presumption applies here, however, because even assuming arguendo that Salley was not present during the subject proceedings, no violation of his constitutional right to be present occurred.

In this case, the proceeding that Salley claims to have missed not only involved a discussion of purely legal issues between the trial court and counsel, but the question being discussed was only whether the jury should be given a written copy of the instructions that the court had just delivered orally. Salley does not contend that the written version of the charge departed from what had been delivered orally, nor does he offer any argument that additional or

8

different portions of the charge should have been provided. There is no argument whatsoever that had he been present during that discussion, anything would have happened differently.[4] The Second Circuit has held that a defendant's right to be present at trial is not violated when the defendant is absent when exhibits previously received in evidence are displayed to the jury, Monroe v. Kuhlman, 433 F.3d 236, 246-47 (2d Cir. 2006), or when a transcript of testimony is sent to the jury room during deliberations, United States v. Schor, 418 F.2d 26, 31 (2d Cir. 1969). Indeed, that Court has also held that a defendant has no due process right to be present during the charge conference at which the substance of the instructions to be given to the jury is discussed and decided. United States v. Rivera, 22 F.3d 430, 438-39 (2d Cir. 1994). The decision whether to send the jury a written copy of instructions that the jury has already heard orally is of far less moment. The state courts' conclusion that the discussion of sending a written version of the charge to the jury was not a circumstance in which the defendant's presence "has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge," or in which "a fair and just hearing would be thwarted by his absence," Kentucky v. Stincer, 482 U.S. 730, 745 (1987), quoting Snyder, 291 U.S. at 105-06, 108 (1934) (internal quotation marks omitted), was a reasonable application of Supreme Court precedent.[5]

---

[4] Salley's dubious argument that state law prohibits the salutary practice of giving the jury a written copy of the instructions raises no issue of federal constitutional magnitude. See 28 U.S.C. § 2254(a) (providing for habeas corpus relief for "violation[s] of the Constitution or laws or treaties *of the United States* (emphasis added)); Estelle v. McGuire, 502 U.S. 62, 67 (1991) (observing that "federal habeas corpus relief does not lie for errors of state law" (internal quotation marks omitted)).

[5] As Salley had no right to be present when the court discussed with counsel whether to submit the written instructions to the jury, it follows, *a fortiori*, that Salley had no right to be present when the court officer performed the purely "ministerial act" of handing the agreed-upon written charge to the jury. See People v. Collins, 99 N.Y.2d 14, 18-19 (2002).

There is simply no merit to the claim that Salley's amply-justified conviction of these cold-blooded crimes should be vacated because he was not present when the court, with his attorney's concurrence, made a purely ministerial decision.

## CONCLUSION

For the foregoing reasons, the petition for habeas corpus is denied. Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.

SO ORDERED.

Dated: New York, New York
March 26, 2008

_____
GERARD E. LYNCH
United States District Judge